Gilliss Valla & Dalsin, LLP
3470 Mt. Diablo Blvd., Ste. A-215
Lafayette, CA 94549
www.gvd-law.com

RECEIVED
AMOUNT $ 250
SUMMONS ISSUED Y-Y
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY CLK.
DATE 4-7-05

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DR. EMILIO MEYER,

     Plaintiff,    Civ. Action No. _____

 - against -

GENERAL ELECTRIC COMPANY,
GE INFRASTRUCTURE, INC.,
GE INFRASTRUCTURE SENSING, INC.,
GE PANAMETRICS, PANAMETRICS, INC.,
and DOES 1 through 20,

     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**05-10681NMG**

MAGISTRATE JUDGE Bowler

# COMPLAINT

NOW COMES Plaintiff DR. EMILIO MEYER ("Dr. Meyer"), and by his undersigned attorneys, makes this complaint against the defendants GENERAL ELECTRIC COMPANY ("GE"), GE INFRASTRUCTURE, INC. ("GI"), GE INFRASTRUCTURE SENSING, INC. ("GIS" and, together with GI, collectively, "GE Infrastructure"), GE PANAMETRICS, PANAMETRICS, INC. ("Panametrics"), and DOES 1 through 20, inclusive, and alleges as follows:

## THE PARTIES

1. Dr. Meyer is an Italian citizen who resides in Assago, Italy.

2. Defendant GE is, and at all times mentioned herein was, a corporation duly incorporated and existing under the laws of the State of New York.

3. Defendant GE's address is 3135 Easton Turnpike, Fairfield, CT 06828-0001.

4. GE is registered to do business and is engaged in and solicits business in the Commonwealth of Massachusetts.

5. Defendant GE Infrastructure is, and at all times mentioned herein was, a corporation duly incorporated and existing under the laws of the State of Delaware.

-1-

COMPLAINT

6. Defendant GE Infrastructure's address is The Boston Center, 1100 Technology Drive, Billerica, MA 01821-4111.

7. GE Infrastructure is registered to do business and is engaged in and solicits business in the Commonwealth of Massachusetts.

8. On information and belief, Defendant GE Panametrics is, and at all times mentioned herein was, a business entity, type unknown, which is registered to do business in the Commonwealth of Massachusetts, and is engaged in and solicits business in Massachusetts.

9. Defendant Panametrics is, and at all times mentioned herein was, a corporation duly incorporated and existing under the laws of the State of Delaware.

10. Panametrics' address is 221 Crescent Street, Waltham, MA, 02493.

11. Panametrics is registered to do business in the Commonwealth of Massachusetts, has a usual place of business in Massachusetts, and is engaged in and solicits business in Massachusetts.

## JURISDICTION AND VENUE

12. This Court has original jurisdiction under 28 U.S.C. §1332(a)(2), for this civil action between a citizen of a foreign state and entities incorporated in New York and Delaware, and on information and belief, who are engaged in and solicit business in Massachusetts and/or have their principal places of business in the Commonwealth of Massachusetts, and in which the matter in controversy exceeds the sum or value of US$75,000, exclusive of interest or costs.

13. This Court is the proper venue for this action pursuant to 28 U.S.C. §§ 1391(a)(2).

14. The events that give rise to this Complaint occurred in Massachusetts, including the formation of a contract between Dr. Meyer and Panametrics, which, at all times mentioned herein, maintained its principal place of business in Waltham, Massachusetts.

15. Dr. Meyer is ignorant of the true names and capacities of defendants sued herein as DOES 1-20, inclusive, and therefore sues these defendants by such fictitious names. Dr. Meyer will amend the complaint to allege their true names and capacities when ascertained. Dr. Meyer is informed and believes, and thereon alleges, that each of the fictitiously named defendants is

1  responsible in some manner for the occurrences herein alleged, and that Dr. Meyer's injuries
2  herein alleged were proximately caused by their conduct.

### FACTS COMMON TO ALL COUNTS

16. Dr. Meyer has a doctoral degree in engineering, and he is the inventor of several patented apparatuses and methods or processes in the general field of oxygen-sensing equipment.

17. On or about April 8, 1987, at Waltham, Middlesex County, Massachusetts, Dr. Meyer and Defendant Panametrics, through its duly authorized and empowered agent, entered into a written contract for Dr. Meyer's services ("the Contract"), a copy of which is attached hereto and incorporated herein by this reference as "Exhibit A."

18. The Contract was executed and delivered by Dr. Meyer and Orlando Cucchiara, Vice President of Panametrics, on or about April 8, 1987. On information and belief, Orlando Cucchiara was acting within the normal course and scope of his employment with Panametrics when he entered into the Contract with Dr. Meyer, and he had Panametrics' express or implied authority to enter into the Contract.

19. According to the terms of the Contract, Dr. Meyer agreed to work as an independent contractor for Panametrics.

20. According to the terms of the Contract, Dr. Meyer agreed to work exclusively for Panametrics and not for any other company, either in competition with Panametrics or not in competition with it.

21. According to the terms of the Contract, Panametrics agreed to pay Dr. Meyer a fixed fee for his consulting services.

22. In addition to paying Dr. Meyer a fixed fee, Panametrics agreed in the Contract to pay Dr. Meyer royalties for products that Panametrics "designed, developed, produced or manufactured and sold which result from work of Emilio Meyer" starting on the date when each product was released to production, and for a period of seventeen (17) years thereafter.

23. The Contract obligates Panametrics to pay Dr. Meyer royalties amounting to two percent (2%) on total product sales up to Five Million Dollars (US$5,000,000) per year, and one percent

(1%) for sales over Five Million Dollars (US$5,000,000) per year, for each of the seventeen (17) years from the time a product is released to production.

24. The totality of the provisions in the Contract, including the provision for payment of royalties, induced Dr. Meyer to enter into the Contract, leave his prior place of employment and begin working exclusively for Panametrics.

25. On or about November 20, 1987, Orlando Cucchiara, Vice President of Panametrics, hand-wrote a valid, binding confirmation of the terms of the Contract between Dr. Meyer and Panametrics (the "Confirmation"). A copy of the Confirmation is attached hereto and incorporated herein by this reference as "Exhibit B."

26. The Confirmation clarified certain Contract terms that included a payment schedule providing for an initial lump sum royalty payment to Dr. Meyer on January 31, 1988, with additional royalty payments to be paid to Dr. Meyer every six (6) months thereafter.

27. From April 8, 1987, until Defendants breached the Contract as more fully set forth below, Dr. Meyer worked exclusively for Panametrics and its successor entities, in full conformance with the Contract.

28. From April 8, 1987, until Defendants breached the Contract as more fully set forth below, Panametrics paid Dr. Meyer royalties under the Contract.

29. From April 8, 1987, until Defendants breached the Contract as more fully set forth below, Dr. Meyer developed certain methods and apparatuses for the exclusive use of Panametrics, which Panametrics used for products that it manufactured and sold; and Panametrics, directly or indirectly through its agents, subsidiaries and/or affiliated companies, paid Dr. Meyer royalties on those products pursuant to the terms of the Contract, including the following products:

a. The Series 300 Flue Gas Analyzer, an analyzer for combustion control, released into production in or about 1988.

b. The Series 350 Zirconia Oxygen Analyzer, an analyzer for combustion control, released into production in or about 1989.

c. The FGA 311, an analyzer for combustion control, released into production in or about 1995 or 1996.

    d.    The OxyTrak, an analyzer for combustion control, based on U.S. Patent 6177001 (January 23, 2001), released into production in or about October 2004.

    e.    The TMO Oxygen Transmitter, a thermoparamagnetic analyzer, based on U.S. Patents 5012669 (May 7 1991) and 5269170 (December 14, 1993), released into production in or about 1989.

    f.    XMO2, a thermoparamagnetic analyzer, also based on U.S. Patents 5012669 (May 7 1991) and 5269170 (December 14, 1993), released into production on a date presently unknown to Dr. Meyer but after the date of said patents.

    g.    APX Advanced Paramagnetic Oxygen Analyzer, also based on U.S. Patents 5012669 (May 7 1991) and 5269170 (December 14, 1993), released into production on a date presently unknown to Dr. Meyer but after the date of said patents.

    h.    TMO2-TC, a thermal conductivity analyzer, released into production on a date presently unknown to Dr. Meyer, but fewer than seventeen (17) years before the date of this Complaint.

    i.    XMTC, a thermal conductivity analyzer, released into production on a date presently unknown to Dr. Meyer, but fewer than seventeen (17) years before the date of this Complaint.

    j.    An additional paramagnetic analyzer based on U.S. Patent 6389880, although Dr. Meyer is unclear as to whether it was released into production.

30.    On or about July 24, 2002, GE announced it had acquired Panametrics, and, on information and belief, purchased one hundred percent (100%) of Panametrics' stock.

31.    On information and belief, Defendants GE and GE Infrastructure, or each of them and their affiliates, assumed all of Panametrics' rights and obligations, including Panametrics' Contract with Dr. Meyer for payment of royalties on the sales of products that Dr. Meyer developed.

32.    Defendants had full knowledge of the Contract between Dr. Meyer and Panametrics prior to their acquisition of Panametrics, in particular the contractual obligation to pay Dr. Meyer royalties for seventeen (17) years from the date each of his products went into production.

///

///

33. After the acquisition of Panametrics, Defendants confirmed in writing to Dr. Meyer that they had knowledge of the Contract and intended to continue paying royalties to Dr. Meyer in accordance with the Contract.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

34. Dr. Meyer refers to and incorporates each and every paragraph set forth above.

35. In or about January 2004, Defendants failed to pay Dr. Meyer royalty payments for sales in the second half of 2003 of the products referenced in paragraph twenty-nine (29) above.

36. Despite repeated demands from Dr. Meyer that they do so, Defendants and each of them have failed and refused, and continue to fail and refuse, to pay Dr. Meyer royalties owed to him for the sales beginning in the second half of 2003 and running to the present on products referenced in paragraph twenty-nine (29) above, as they are obligated to do according to the Contract.

37. As a result of Defendants' breach of the Contract, Defendants have proximately caused Dr. Meyer to sustain monetary damages in an amount, on information and belief, in excess of Seven Hundred Fifty Thousand Dollars (US$750,000).

## SECOND CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

38. Dr. Meyer refers to and incorporates each and every paragraph set forth above.

39. In every contract, there is an implied covenant of good faith and fair dealing, obligating the parties to deal with each other in a fair and equitable manner.

40. Dr. Meyer is informed and believes and thereon alleges that Defendants and each of them, despite their knowledge of the Contract and their duties thereunder, and despite having assured Dr. Meyer that they would honor their duties under it, intentionally disregarded it and ceased paying Dr. Meyer beginning in January 2004 for royalties he earned from the second half of 2003 to the present.

41. Moreover, beginning in or about August 2004, Defendants and each of them refused to respond to communications from Dr. Meyer regarding the overdue royalty payments.

42. Despite several attempts by Dr. Meyer to contact Defendants regarding overdue royalty payments, Defendants and each of them failed either to pay Dr. Meyer in accordance with the terms of the Contract or to assert a reason for their nonpayment.

43. On information and belief, Defendants and each of them ceased communications with Dr. Meyer with full knowledge that Dr. Meyer is an individual who resides in Assago, Italy, and has little knowledge of or access to the U.S. courts for redress.

44. By intentionally breaching the Contract, and for refusing to communicate with Dr. Meyer, Defendants and each of them have breached the implied covenant of good faith and fair dealing embodied within the Contract.

45. As a result of Defendants' breach of the implied covenant of good faith and fair dealing, Defendants and each of them have proximately caused Dr. Meyer to sustain monetary damages in an amount, on information and belief, in excess of Seven Hundred Fifty Thousand Dollars (US$750,000).

### THIRD CAUSE OF ACTION
**(Declaratory Relief)**

46. Dr. Meyer refers to and incorporates each and every paragraph set forth above.

47. An actual controversy has arisen and now exists between Dr. Meyer and Defendants concerning their respective rights and duties under the Contract; namely, Dr. Meyer contends that Defendants and each of them are in breach of the Contract to pay him royalties on the sales of each and every product he developed for a period of seventeen (17) years after the release of each such product, and on information and belief, Defendants dispute these contentions.

48. Dr. Meyer desires and is entitled to a judicial determination of his rights and duties under the Contract, and a declaration as to whether he is entitled to royalties on the sale of each and every product he developed for seventeen (17) years after the release of each such product, and for what dollar amounts.

///

49. A judicial declaration is necessary and appropriate at this time under the circumstances in order that Dr. Meyer may ascertain his rights and duties under the Contract. The unsettled state of affairs is creating a financial burden on Dr. Meyer because he is not receiving royalty payments from Defendants on the products he developed while working exclusively for Defendants.

50. Dr. Meyer has suffered monetary damages in an amount to be determined since Defendants first refused to pay royalties beginning in January 2004 for sales beginning the second half of 2003 to the present.

51. In trying to cure this controversy, Dr. Meyer has exhausted all other remedies including repeatedly contacting Defendants over the telephone, by email and by mail.

## FOURTH CAUSE OF ACTION
### (Accounting of Royalties)

52. Dr. Meyer refers to and incorporates each and every paragraph set forth above.

53. Defendants and each of them owe Dr. Meyer a fiduciary duty with respect to the determination, calculation and payment of the royalties due him under the Contract.

54. Pursuant to the Contract, Defendants and each of them are obligated to pay royalties to Dr. Meyer on the sales of each and every product he developed for a term of seventeen (17) years after the release to production of each such product.

55. Dating back to the first royalty payment on January 31, 1988, Defendants and each of them have failed, and continue to fail, to provide Dr. Meyer with a written accounting of the royalty payments due him under the Contract.

56. A judicially supervised accounting is necessary and appropriate at this time under the circumstances in order for Dr. Meyer to ascertain the amount of the royalties due him under the Contract with Defendants.

57. Dr. Meyer does not have access to Defendants' books and has no other means by which to ascertain the dollar amounts of sales of products he developed and, thus, the amount of royalties he is due.

58. Dr. Meyer is entitled to an accounting of all royalties due from January 31, 1988 to the

59. present and to payment of any and all unpaid royalties as determined.

60. Dr. Meyer has no adequate remedy at law with which to cure this controversy.

### FIFTH CAUSE OF ACTION
### (Unfair Business Practices Pursuant to Massachusetts General Laws Chapter 93A)

61. Dr. Meyer refers to and incorporates each and every paragraph set forth above.

62. The totality of the provisions in the Contract, including the provision for payment of royalties, induced Dr. Meyer to enter into the Contract, leave his prior place of employment and begin working exclusively for Panametrics and its successor entities.

63. Pursuant to the Contract, Defendants and each of them are obligated to pay royalties to Dr. Meyer on the sale of each and every product he developed for a term of seventeen (17) years after the release to production of each such product.

64. Defendants and each of them had full knowledge of the Contract and its terms at the time of Defendants' acquisition of Panametrics in July 2002.

65. In or around January 2004, Defendants and each of them unfairly and in clear breach of the Contract ceased making royalty payments to Dr. Meyer for the products referenced in paragraph twenty-nine (29) above.

66. In or about August 2004, Defendants and each of them refused to respond to communications from Dr. Meyer regarding the overdue royalty payments.

67. Despite several attempts by Dr. Meyer to contact Defendants regarding overdue royalty payments, Defendants and each of them failed to either pay Dr. Meyer in accordance with the terms of the Contract or to assert a reason for their nonpayment.

68. Dr. Meyer is informed and believes and thereon alleges that Defendants and each of them, despite their knowledge of the Contract, intentionally and unfairly disregarded it and ceased paying royalties to Dr. Meyer beginning in January 2004 for sales from the second half of 2003 to the present.

69. On information and belief, Defendants knowingly made false and deceptive statements after the acquisition of Panametrics when, having no intention of honoring the Contract, Defendants assured Dr. Meyer that they would continue to pay royalties under the Contract.

70. Relying on Defendants' misrepresentations, Dr. Meyer continued developing methods and apparatuses subject to the Contract that were used by Defendants.

71. As a result of the unfair and deceptive practices, Dr. Meyer lost money attributable to products developed after the misrepresentations were made and lost the opportunity to work elsewhere.

72. Dr. Meyer is informed and believes and thereon alleges that Defendants and each of them performed the above-mentioned acts in an unfair, calculated and deceptive manner, in order to advance their own financial interests, while in the process wrongfully depriving Dr. Meyer of his royalties.

73. Dr. Meyer is informed and believes and thereon alleges that Defendants and each of them intentionally breached the Contract with full knowledge that Dr. Meyer, who resides in Assago, Italy, has relatively little knowledge of or access to the U.S. courts for redress of his contractual grievances.

74. On information and belief, Dr. Meyer alleges that the conduct of Defendants and each of them in breaching the Contract with Dr. Meyer is an integral part of a pattern and practice of doing business the sole purpose of which is to take unfair advantage of less wealthy, less sophisticated individuals and/or entities like Dr. Meyer.

75. As a proximate result of Defendants' unfair and deceptive acts, Dr. Meyer has been damaged in a substantial amount to be determined at trial.

**WHEREFORE**, Dr. Meyer prays:

76. On the first cause of action for Breach of Contract, for damages equal to the full amount due to Dr. Meyer under the Contract.

77. On the second cause of action for Breach of Implied Covenant of Good Faith and Fair Dealings, for damages equal to the full amount due to Dr. Meyer under the Contract.

78. On the third cause of action for Declaratory Relief, for a declaration that, in accordance with the Contract, Defendants shall pay royalties to Dr. Meyer on the sales of each and every product he developed for a term of seventeen (17) years after the release of each such product.

Defendants shall pay royalties in the amount of two percent (2%) of the total product sales up to Five Million Dollars (US$5,000,000) in any given year, and one percent (1%) for sales over Five Million Dollars (US$5,000,000) in any given year.

79. On the fourth cause of action for an Accounting of Royalties, for a judicially supervised accounting of the royalties due Dr. Meyer under the Contract since January 31, 1988 and for payment of any and all unpaid royalties as determined.

80. On the fifth cause of action for Unfair Business Practices Pursuant to Massachusetts General Laws Chapter 93A, for the following:

    a. damages sustained as a result of Defendants' unfair and deceptive business practices;

    b. the doubling or trebling of such damages due to the intentional and willful nature of Defendants' unfair and deceptive conduct;

    c. attorneys' fees and costs incurred by Dr. Meyer in bringing this action; and

    d. such other and further relief as the Court may deem proper.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.

1

2              Respectfully submitted.

3              DR. EMILIO MEYER
               By his attorneys,

4  Date: April 6, 2005

5              *Michael P. Twohig*
               Michael P. Twohig (BBO#648079)

6              PERKINS, SMITH & COHEN, LLP
               One Beacon Street, 30th Floor

7              Boston, MA  02108
               (617) 854-4000

8

9

10 Of Counsel:

11

12 **Antonio Valla, CA Bar # 136256**
   **Douglas E. Watts, CA Bar #  182274**

13 **Stephanie L. Southwick, CA Bar # 226631**
   **(Pro Hac Vice applications pending)**

14 Gilliss Valla & Dalsin, LLP
   3470 Mt. Diablo Blvd., Suite A-215

15 Lafayette, CA 94549

16 Tel. 925 962-9009

17

(left margin: Gilliss Valla & Dalsin, LLP / 3470 Mt. Diablo Blvd., Ste. A-215 / Lafayette, CA 94549 / www.gvd-law.com)

-12-

COMPLAINT

**05-10681NMG**

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Dr. Emilio Meyer

**(b)** County of Residence of First Listed Plaintiff  Assago, Italy
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number) 617-854-4000
Michael P. Twohig, Perkins, Smith & Cohen, LLP
1 Beacon Street, 30th Flr., Boston, MA 02108

## DEFENDANTS
General Electric Company, GE Infrastructure, Inc., GE Infrastructure Sensing, Inc., GE Panametrics, Panametrics, Inc., and Does 1 through 20

County of Residence of First Listed Defendant  Fairfield, CT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)
Unknown

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1332(a)(2)
Brief description of cause:
Breach of contract; breach of implied covenant; and violation of M.G.L. c. 93A

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 4/6/05

SIGNATURE OF ATTORNEY OF RECORD
Michael P. Twohig

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __Meyer v. General Electric Company et al.__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   | | I. | 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT. |
   |---|---|---|
   | | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.   *Also complete AO 120 or AO 121 for patent, trademark or copyright cases |
   | X | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891. |
   | | IV. | 220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900. |
   | | V. | 150, 152, 153. |

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
   __N/A__

   05-10681 NMG

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES [ ]   NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES [ ]   NO [X]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES [ ]   NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES [ ]   NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES [X]   NO [ ]

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division [X]   Central Division [ ]   Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division [ ]   Central Division [ ]   Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)   N/A
   YES [ ]   NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __Michael P. Twohig__
ADDRESS __Perkins, Smith & Cohen, LLP, One Beacon Street, 30th Floor, Boston, MA 02108__
TELEPHONE NO. __617-854-4000__

(CategoryForm.wpd - 2/15/05)




**PANAMETRICS**  221 CRESCENT STREET WALTHAM, MA 02254 / 617 899-2719  HYG TELEX 951005

## AGREEMENT BETWEEN PANAMETRICS, INC. AND EMILIO MEYER

Contract Agreement between Emilio Meyer, his heirs and assigns on the one hand and Panametrics, Inc., Waltham, MA, USA on the other.

Whereas Emilio Meyer wishes to do work for Panametrics, Inc. (hereinafter called Panametrics) and whereas Panametrics wishes to avail of the results of his work, be it known that:

Emilio Meyer as an independent contractor will work only for Panametrics and not for any other Company or body either in competition with Panametrics or not.

Emilio Meyer's work will be paid for under agreed conditions between Panametrics and Emilio Meyer. Panametrics will in addition pay a royalty or fee for work done by Emilio Meyer on the basis of sales of product or products developed by Emilio Meyer.

From the time a product is released to production, as defined by the initiation date of the Production Release Form, and for a period of seventeen years thereafter Panametrics will pay two percent on sales of Total Products up to five million dollars at U.S. List per year and one percent per year on sales over five million dollars at U.S. List. Sales will be of product or products designed, developed, produced or manufactured and sold which result from work of Emilio Meyer exclusively and this agreement is intended to relate to the formality of relationship between Panametrics and Emilio Meyer.

Signed this 8th day of April      in the year 1980

_____          _____
Orlando P. Cucchiara VP
Panametrics, Inc.

2

To: P.J. McKeown                                   Nov 20, 1987

From: Al Cucchiara

Re: E. Meyer

Dear Pat:

    Please increase Emilio's salary by 10% effective May 1, 1987. In addition, it has been agreed that Emilio will receive a 2% royalty on sales at U.S. List for all products developed by Emilio. This 2% is effective up to the first $5,000,000 in sales. He will receive a 1% royalty for sales in excess of $5,000,000. This royalty is retroactive to May 1, 1987 and is to be paid in a lump sum on Jan 31, 1988. Thereafter it is to be paid every six months.

    The above has been approved by D. Chleck. If there are any questions, please advise.